[This decision has been published in *Ohio Official Reports* at 93 Ohio St.3d 214.]

THE STATE EX REL. MIDDLESWORTH, APPELLEE, *v*. REGAL WARE, INC., APPELLANT, ET AL.

[Cite as *State ex rel. Middlesworth v. Regal Ware, Inc.,* 2001-Ohio-1331.]

*Workers' compensation—Application for permanent total disability compensation and change-of-occupation compensation denied by Industrial Commission—Commission's reliance on medical report in denying permanent total disability compensation claim not an abuse of discretion, when—Claimant retains eligibility for change-of-occupation compensation if all applicable criteria are met—Cause remanded on issue of change-of-occupation compensation.*

(No. 99-1663—Submitted May 15, 2001—Decided September 26, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-1017.

_____

LUNDBERG STRATTON, J.

{¶ 1} Appellee-claimant, Frances E. Middlesworth, began working for appellant, Regal Ware, Inc., in approximately 1979. In 1990, she filed a workers' compensation claim alleging that she had contracted a respiratory condition as a result of inhaled contaminant exposure. An occupational disease claim was allowed for "interstitial pulmonary fibrosis with bilateral apical lung disease." Claimant received temporary total disability compensation ("TTC") followed by wage-loss compensation.

{¶ 2} On March 4, 1996, claimant moved for permanent total disability compensation ("PTD") based on Dr. Joseph A. Sopko's certification of an inability to do sustained remunerative employment. On June 12, 1996, she was examined by commission pulmonary specialist Dr. Stephen L. Demeter. Under the heading "assessment," he wrote:

"At the present time I find no evidence to support the claim of interstitial pulmonary fibrosis with bilateral apical lung disease. A repeat chest x-ray would be recommended to attempt to confirm this. Additionally, a CAT scan with 'thin cuts' would be highly suggested to determine whether or not there would be any evidence for bronchiectasis. Lastly, there were elements of her history which were suggestive of hypersensitivity pneumonitis which can create a problem of interstitial infiltrates on the chest x-ray. However, these infiltrates will disappear with time.

"Stating that I find no evidence for interstitial lung disease on this individual, I must say that she has reached maximum medical improvement. There is a 0% impairment arising from her condition. Her work capacity is unimpaired. I attribute her diminished vital capacity to her slight body build. Her slight body build, however, may prevent her from having the ability to perform heavy manual labor. However, this is outside this claim. I find no reason why she cannot return to her former position of employment. I find no reason why she can not perform any sustained remunerative activity with the exception of heavy and manual labor as noted above."

{¶ 3} PTD was denied via tentative order on August 1, 1996, based on Dr. Demeter's report. That order was affirmed at a November 13, 1996 hearing.

{¶ 4} Three months later, claimant filed for change-of-occupation benefits under R.C. 4123.57(D). A district hearing officer ("DHO") denied the motion for two reasons: claimant did not suffer from asbestosis, silicosis, or coal miners' pneumoconiosis, and claimant did not establish that she is an employee of a State Fund employer. Both are required by R.C. 4123.57(D). A staff hearing officer ("SHO") reversed the DHO with regard to the finding that claimant is not an employee of a State Fund employer but otherwise affirmed, adding:

"Also, per Industrial Commission order of 11/13/1996, the Industrial Commission found the claimant not to be Permanently and Totally Disabled on the

basis of Dr. Demeter's medical opinion that the claimant can return to work at her former position of employment. No medical proof, based on a medical examination of the claimant subsequent to said Industrial Commission finding has been submitted by the claimant to support a medical change in her condition to support that she is unable to return to work at her former position of employment."

{¶ 5} Further appeal was refused.

{¶ 6} Rather than contest the finding in mandamus, claimant filed another change-of-occupation motion in September 1997. Attached was a July 10, 1997 report pertaining to a high-resolution CAT scan that Dr. Demeter had recommended a year earlier. A DHO declared the motion *res judicata*, and an SHO affirmed. Consequently, the denial of change-of-occupation benefits remained intact.

{¶ 7} On August 7, 1998, claimant filed a complaint in mandamus in the Court of Appeals for Franklin County alleging that the commission had abused its discretion in denying both her PTD motion and her change-of-occupation motion and seeking two writs. The court of appeals agreed that an abuse of discretion had occurred and granted both writs, returning the cause to the commission for further consideration of both questions.

{¶ 8} This cause is now before this court upon an appeal as of right.

PTD

{¶ 9} This controversy centers on Dr. Demeter's conclusion that "[a]t the present time I find no evidence to support the claim of interstitial pulmonary fibrosis with bilateral apical lung disease." The court of appeals interpreted this language as the doctor's refusal to accept the claim's allowed conditions. We disagree. Instead, we find our opinion in *State ex rel. Domjancic v. Indus. Comm.* (1994), 69 Ohio St.3d 693, 635 N.E.2d 372, to be dispositive.

{¶ 10} In *Domjancic*, an examining physician noted "[n]o evidence of a herniated disc L4-5 on the right"—the claim's allowed condition. That claimant, in turn, offered the very argument that Middlesworth presents. In rejecting that

position, the *Domjancic* court concluded that "Dr. Gonzalez's report, at the outset, outlines *all* allowed conditions, substantiating his awareness of what the claimant's recognized conditions were. That the doctor, upon examination, found no evidence of a herniated disc, does not amount to a repudiation of the allowance. As the referee insightfully stated:

" 'Dr. Gonzalez was not required to merely parrot the allowed conditions as his medical findings. It was Dr. Gonzalez's duty to report his actual clinical findings. Obviously, the doctrines of *res judicata* and *collateral estoppel* do not apply to limit what a doctor may find during his examination.' " (Emphasis *sic*.) *Id*. at 695-696, 635 N.E.2d at 375.

{¶ 11} Obviously, Dr. Demeter knew that a pulmonary condition was at issue. He referred to "interstitial lung disease" three times in his report. "Interstitial fibrosis" and "interstitial infiltrates" are also mentioned, and again, the allowance is quoted verbatim in his report. However, according to Dr. Demeter, the condition no longer existed. This is not a situation where the doctor acknowledged the condition's existence but refused to accept the commission's prior determination of industrial causal relationship. In this case, it is immaterial whether Dr. Demeter believed that the claim was correctly or incorrectly allowed years ago. What matters is how the condition was affecting claimant's ability to work *at the time of the examination*, and Dr. Demeter found no impact. Accordingly, the commission, as the sole evaluator of evidentiary weight and credibility, did not abuse its discretion in citing Dr. Demeter's report as "some evidence" of a capacity for sustained remunerative employment. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936.

{¶ 12} Therefore, on the issue of PTD, we reverse the judgment of the court of appeals and reinstate the order of the Industrial Commission.

Change of Occupation

**{¶ 13}** The DHO denied the claimant's application for change-of-occupation benefits, in part, on R.C. 4123.57(D)'s limitation of such benefits to claimants with silicosis, asbestosis, or coal miner's pneumoconiosis. We find, however, that when the provision is read *in pari materia* with R.C. 4123.68, eligibility for change-of-occupation benefits extends to all dust-induced occupational diseases. This latter statute lists various specific occupational diseases as compensable but adds:

"A disease which meets the definition of an occupational disease is compensable pursuant to this chapter though it is not specifically listed in this section.

"* * *

"All conditions, restrictions, limitations, and other provisions of this section, with reference to the payment of compensation or benefits on account of silicosis or coal miners' pneumoconiosis apply to the payment of compensation or benefits on account of any other occupational disease of the respiratory tract resulting from injurious exposures to dust."

**{¶ 14}** We find, therefore, that the claimant retains eligibility for change-of-occupation compensation if all applicable criteria are met. Accordingly, we return the cause for further proceedings on the issue of change-of-occupation compensation consistent with this opinion. On the issue of PTD, we reverse the judgment of the court of appeals and reinstate the order of the Industrial Commission.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., RESNICK, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., dissents.

F.E. SWEENEY, J., dissents and would affirm the judgment of the court of appeals.

_____

*Larrimer & Larrimer* and *David H. Swanson,* for appellee.

*Pickrel, Schaeffer & Ebeling, David C. Korte* and *Michelle D. Bach*, for appellant.

_____