DECISION
{¶ 1} Relator, Regal Ware, Inc., has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that awarded claimant-respondent, Frances Middlesworth, 30 weeks of change of occupation benefits beginning July 10, 1997, but denying claimant an additional 100 weeks of such benefits.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that, based on this court's decision in State ex rel. Early v. Indus. Comm. (1995), 103 Ohio App.3d 199, the requested writ of mandamus should be granted. Relator and the commission have filed objections to the magistrate's decision.
 {¶ 3} In its objections, relator argues that the magistrate failed to address its argument that there is no evidence to support the commission's findings that claimant changed or discontinued her occupation as of July 10, 1997, and that the award for 30 weeks change of occupation benefits is barred by the statute of limitations set forth in R.C. 4123.54. The commission, in its objections, argues that Early was incorrectly decided and that the first 30 weeks of change of occupation benefits do not require a job search.
 {¶ 4} In Early, this court stated, at 203-204:
* * * It is clearly stated in R.C. 4123.57(D) that in order to be entitled to change of occupation benefits, an employee must change or shall change his occupation. * * *
* * *
* * * To accept relator's premise would require this court to read the words "the employee * * * has changed or shall change his occupation" completely out of R.C. 4123.57(D). The syllabus of [State ex rel. Sayre v. Indus. Comm. (1969), 17 Ohio St.2d 57] states:
"Where an employee discontinues his employment and there is a finding by the Industrial Commission that his change of occupation is medically advisable due to silicosis, such employee is entitled to the compensation prescribed by Section 4123.57(D), Revised Code, for the 30 weeks following such discontinuance and for those portions of the next 75 weeks in which he has reasonably attempted to obtain the new employment required by such section." (Emphasis added.)
The court clearly notes that new employment, or a reasonable attempt to obtain such employment, is required by the statute. In addition, the fact that an employee must actually change his occupation in order to be entitled to benefits under R.C. 4123.57(D) was confirmed in State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56, 29 OBR 438,505 N.E.2d 962 * * *.
 {¶ 5} Upon consideration of the commission's arguments, we conclude that Early was correctly decided and we decline the commission's invitation to revisit the issue. Likewise, we reject the commission's argument that common sense requires the two periods of change of occupation benefits to be treated differently and that this may only be accomplished by not requiring a job search for the first 30 weeks. The statute, however, distinguishes the two periods of time by awarding different amounts of compensation for each period. Therefore, the commission's objections are overruled.
 {¶ 6} Likewise, we find relator's objections to be without merit. Having decided the substantive legal issue in favor of relator, the magistrate was not required to address all of the alternative arguments presented. Relator's objections to the magistrate's decision are overruled.
 {¶ 7} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Therefore, this court grants a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its April 19, 2002 order that granted respondent-claimant, Frances Middlesworth, 30 weeks of change of occupation benefits beginning July 10, 1997, and to issue an order denying such benefits.
Objections overruled, writ of mandamus granted.
KLATT and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution
 APPENDIX A IN MANDAMUS {¶ 8} Relator, Regal Ware, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded to claimant Frances Middlesworth ("claimant") 30 weeks of change of occupation ("CO") benefits beginning July 10, 1997, but denying claimant an additional 100 weeks of CO benefits because she presented no evidence demonstrating any job search. Relator contends that claimant is not entitled to any CO benefits.
Findings of Fact:
 {¶ 9} 1. On March 23, 1990, claimant filed a workers' compensation claim alleging that she had acquired the occupational disease of "[i]nterstitial pulmonary fibrosis with bilateral apical lung disease" as a direct result of her employment with relator.
 {¶ 10} 2. Claimant received temporary total disability ("TTD") compensation for the time period of January 15, 1990 through October 6, 1990, when the commission declared that her condition had become permanent and terminated TTD compensation as of that date.
 {¶ 11} 3. Thereafter, claimant filed an application for wage loss compensation which was initially denied by the Ohio Bureau of Workers' Compensation.
 {¶ 12} 4. Ultimately, the commission granted claimant's request for wage loss compensation and claimant received such for the maximum allowable period of 200 weeks beginning October 6, 1990 through July 6, 1995.
 {¶ 13} 5. Claimant filed an application for permanent total disability ("PTD") compensation on April 4, 1996.
 {¶ 14} 6. By order dated November 13, 1996, the commission denied relator's request for PTD compensation based upon the June 12, 1996 report of Stephen L. Demeter, M.D., upon finding that claimant could perform her former job.
 {¶ 15} 7. Instead of challenging the denial of her PTD application immediately, claimant filed an OD-5-S Application for Change of Occupation Benefits on March 4, 1997.
 {¶ 16} 8. Claimant's CO benefit application was heard before a district hearing officer ("DHO") on May 12, 1997, and resulted in an order denying the application on the grounds that relator was not a state-funded employer and because claimant was not afflicted with any of the statutorily designated diseases (asbestosis, silicosis, or coal miners pneumoconiosis) as specified in R.C. 4123.57(D).
 {¶ 17} 9. The matter was appealed and heard before a staff hearing officer ("SHO") on June 13, 1997, and resulted in an order affirming the prior DHO order.
 {¶ 18} 10. Claimant filed a second application seeking CO benefits from the time her TTD compensation had ceased on September 5, 1997. Based upon the July 10, 1997 report of Robert Schilz, D.O., who opined that the CAT scan results demonstrated that claimant had interstitial pulmonary fibrosis.
 {¶ 19} 11. The motion was heard by a DHO on October 20, 1997, and was denied based upon the conclusion that the matter was res judicata from the prior proceeding denying her first application for CO benefits.
 {¶ 20} 12. On appeal, the SHO agreed and affirmed the prior DHO decision determining that the matter was res judicata.
 {¶ 21} 13. Thereafter, claimant filed a mandamus action in this court seeking two writs of mandamus to overturn both the denial of her PTD application and the denial of her application for CO benefits.
 {¶ 22} 14. This court granted writs on both issues. See State ex rel. Middlesworth v. Regal Ware, Inc. (Aug. 5, 1999), Franklin App. No. 98AP-1017 ("Middlesworth I").
 {¶ 23} 15. Thereafter, on appeal to the Ohio Supreme Court, the writ was denied as to PTD compensation. The court determined that State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693, was dispositive. However, with regard to application for CO benefits, the court read R.C. 4123.57(D) in pari materia with R.C. 4123.68 to extend CO compensation to all dust-induced occupational diseases and reprimanded the CO issue for further consideration and another decision by the commission. See State ex rel. Middlesworth v. Regal Ware, Inc. (2001),93 Ohio St.3d 214 ("Middlesworth II").
 {¶ 24} 16. Upon remand, claimant submitted the November 29, 2000 report from Marcellus J. Gilreath, M.D., who recommended that she not return to any type of work environment which caused her pulmonary disease, rated her at a 75 percent whole person impairment as a result of her allowed condition, and noted that her disease is progressive so that her impairment would increase over time.
 {¶ 25} 17. By order dated April 19, 2002, the SHO granted claimant CO benefits as follows:
 {¶ 26} "The Hearing Officer finds that pursuant to a decision made by the Court of Appeals 10th Appellate District, the claimant's allowed condition of interstitial pulmonary fibrosis with bilateral apical lung disease, is a condition that is to be recognized as a disease covered by Revised Code 4123.68
 {¶ 27} "Therefore, the Hearing Officer finds that the claimant has contracted the disease of interstitial pulmonary fibrosis with bilateral apical lung disease, which is not causing total disability.
 {¶ 28} "The Hearing Officer further finds, however, that it is medically advisable and recommended, in order to decrease substantial further injurious exposure that the claimant change occupation and that such change occurred on 07/10/1997.
 {¶ 29} "It is ordered, therefore, that in accordance with Section 4123.57(D) of the Ohio Revised Code that the claimant be awarded compensation at the weekly rate of 50% Statewide Average Weekly Wage for a period of 30 weeks commencing 07/10/1997.
 {¶ 30} "It is further ordered that necessary medical care because of the interstitial pulmonary fibrosis with bilateral apical lung disease, be authorized and appropriate bills for the same be paid.
 {¶ 31} "The Hearing Officer, in making this finding, has relied upon the following evidence: Dr. Gilreath, claimant's physician's finding indicating claimant is not capable of return[ing] to work at her former position of employment, and should change occupations.
 {¶ 32} "The Hearing Officer finds that there is no evidence that has been presented to indicate claimant attempted to obtain other employment.
 {¶ 33} "The Hearing Officer also relied on the claimant's testimony at hearing.
 {¶ 34} "Therefore, the claimant is not eligible for payment of a 100 weeks compensation due to a change of occupation."
 {¶ 35} 18. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law: {¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 37} Relator challenges the commission's order in three respects: (1) the commission abused its discretion by determining that claimant was entitled to 30 weeks of CO benefits in spite of the fact that she did not conduct a reasonable job search; (2) the commission abused its discretion by finding that claimant's "change" occurred on July 10, 1997, the date of Dr. Gilreath's report instead of October 6, 1990, the date when her TTD compensation had ceased; and (3) the commission abused its discretion by awarding claimant CO benefits after she had already received 200 weeks of wage loss compensation, the maximum amount allowed.
 {¶ 38} R.C. 4123.57(D) provides, in pertinent part, as follows:
 {¶ 39} "If an employee of a state fund employer makes application for a finding and the administrator finds that the employee has contracted silicosis * * * or asbestosis * * * and that a change of such employee's occupation is medically advisable in order to decrease substantially further exposure, * * * and if the employee, after the finding, has changed or shall change the employee's occupation to an occupation in which the exposure * * * is substantially decreased, the administrator shall allow to the employee an amount equal to fifty per cent of the statewide average weekly wage per week for a period of thirty weeks, commencing as of the date of the discontinuance or change, and for a period of one hundred weeks immediately following the expiration of the period of thirty weeks, the employee shall receive sixty-six and two-thirds per cent of the loss of wages resulting directly and solely from the change of occupation but not to exceed a maximum of an amount equal to fifty per cent of the statewide average weekly wage per week. * * *"
 {¶ 40} In the Middlesworth II case, the Ohio Supreme Court read R.C. 4123.57(D) in pari materia with R.C. 4123.68 and concluded that eligibility for CO benefits extends to all dust-induced occupational diseases. As such, the commission may award 30 weeks of compensation at 50 percent of the statewide average weekly wage if the commission finds: (1) the claimant contracted the disease; (2) a change of occupation is medically advisable in order to decrease substantially further exposure; and (3) the claimant has changed or shall change to an occupation where the exposure is substantially decreased. Immediately following the expiration of the 30-week period, the commission may further award, for a period of 100 weeks, sixty-six and two-thirds percent of the lost wages resulting directly and solely from the change of occupation, not to exceed a maximum amount equal to 50 percent of the statewide average weekly wage per week.
 {¶ 41} Although the statute itself does not reference a job search, relator contends that certain case law requires that a claimant demonstrate a reasonably diligent job search to qualify for both the initial 30-week period as well as the following 100-week period. Relying upon the same case law, the commission contends that the legislature demonstrated some difference in eligibility by the very fact that the legislature divided the potential award period into two distinct periods. According to the commission, if the legislature would have intended that the claimant demonstrate a reasonably diligent job search for the entire time, then the legislature would have simply said that a claimant could be eligible for up to 130 weeks of CO benefits.
 {¶ 42} In State ex rel. Sayre v. Indus. Comm. (1969),17 Ohio St.2d 57, the employee had discontinued his job in April 1962, and his application for PTD compen-sation was denied in May 1963. Thereafter, the employee applied for CO benefits. The commission granted CO benefits for the first time period, but denied the employee CO benefits for the additional period on the grounds that the employee had not obtained further employment. Thereafter, the employee became employed and re-applied for the second time period of CO benefits. This application was denied on the grounds that the commission determined that compensation was only permitted for the first 105 weeks immediately following the change of employment. On appeal, this court held that the employee should have been compensated for the entire second time period.
 {¶ 43} On appeal, the Ohio Supreme Court noted the changes which had taken place in the statute. At that time, the commission argued that the statutory language limited payment of compensation for discontinuance of employment to a 30-week period and that the additional period applied only to payment based upon the difference between income from the former occupation and a new or changed occupation and that the latter award is payable only if that period follows immediately after the 30-week period. The employee argued that that interpretation would deny compensation to someone who had diligently sought the required new work, but, due to their disability, has been unable to find it. The court determined that "discontinuance" of occupation and "change" of occupation were synonymous in the statute and held as follows:
 {¶ 44} "Where an employee discontinues his employment and there is a finding by the Industrial Commission that his change of occupation is medically advisable due to silicosis, such employee is entitled to the compensation prescribed by Section 4123.57(D), Revised Code, for the 30 weeks following such discontinuance and for those portions of the next 75 weeks in which he has reasonably attempted to obtain the new employment required by such section. * * *" Id., syllabus.
 {¶ 45} Even though the question was not squarely before the court, one could read the Ohio Supreme Court's decision in Sayre to require reasonable attempts to obtain new employment before a claimant qualified for only the second time period. However, later, in State exrel. Early v. Indus. Comm. (1995), 103 Ohio App.3d 199, this court was called upon to interpret another version of R.C. 4123.57(D) which contained the language "has changed or shall change." In Early, the claimant filed an occupational disease claim in September 1986. In February 1988, the employee's claim was allowed, but TTD compensation was denied through the appeal process. Thereafter in September 1990, the employee applied for CO benefits alleging a date of disability of April 16, 1987. Ultimately, two SHOs denied CO benefits for the date beginning April 16, 1987, because the claimant was not working, had taken retirement, and was not looking for other work.
 {¶ 46} The employee filed a mandamus action in this court and argued that the holding in Sayre does not require a claimant to be working in another occupation or to be actively seeking employment in order to be entitled to the first 30-weeks of CO benefits. This court disagreed. This court specifically found that new employment, or a reasonable attempt to obtain such employment, is required by the statute for both time periods. Id. at 204.
 {¶ 47} The question posed in this case was specifically answered by this court in it decision in Early. As such, this magistrate finds that the holding in Early applies to the facts of this case. In Early, this court expressly stated that a claimant must demonstrate reasonable attempts to obtain new employment in order to qualify for both time periods. Because there was no evidence of a reasonable job search presented, this magistrate finds that the commission did abuse its discretion in granting CO benefits to claimant.
 {¶ 48} Accordingly, it is the magistrate's decision that this court should issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order granting claimant CO benefits and that those benefits should instead be denied.