THE STATE EX REL. REGAL WARE, INC., APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE; MIDDLESWORTH, APPELLANT.

[Cite as *State ex rel. Regal Ware, Inc. v. Indus. Comm.,* 105 Ohio St.3d 1, 2004-Ohio-6893.]

(No. 2003–1682—Submitted October 26, 2004—Decided December 22, 2004.)

**Per Curiam.**

{¶ 1} The workers' compensation claim of appellant-claimant, Frances E. Middlesworth, was allowed for "interstitial pulmonary fibrosis with bilateral apical lung disease." On the advice of her doctor, claimant left her job in order to avoid further injurious exposure to fumes and dust. For the time period relevant to this action, claimant did not seek other employment.

{¶ 2} Earlier litigation between these parties resulted in expanded eligibility for R.C. 4123.57(D) change-of-occupation benefits. *State ex rel. Middlesworth v. Regal Ware, Inc.* (2001), 93 Ohio St.3d 214, 754 N.E.2d 774 ("*Middlesworth I*"). Previously confined to claimants with asbestosis, silicosis, or coal miners' pneumoconiosis, after *Middlesworth I*, R.C. 4123.57(D) applied to an otherwise qualifying claimant who had any dust-induced occupational disease. Under the statute, such a claimant could be compensated under specified circumstances:

{¶ 3} "If * * * a change of such employee's occupation is medically advisable in order to decrease substantially further exposure to * * * [injurious] dust and if the employee, after the finding, has changed or shall change the employee's occupation to an occupation in which the exposure to [such] dust * * * is substantially decreased, the administrator shall allow to the employee an amount equal to fifty per cent of the statewide average weekly wage per week for a period of thirty weeks, commencing as of the date of the discontinuance or change, and for a period of one hundred weeks immediately following the expiration of the period of thirty weeks, the employee shall receive sixty-six and two-thirds per cent of the loss of wages resulting directly and solely from the change of occupation but not to exceed a maximum of an amount equal to fifty per cent of the statewide average weekly wage per week."

{¶ 4} Appellee Industrial Commission granted in part claimant's change-of-occupation application, ordering compensation for the first 30 weeks, while 100

additional weeks were denied for lack of evidence that claimant had sought other employment.

{¶ 5} Appellee-employer Regal Ware, Inc. filed a mandamus petition in the Court of Appeals for Franklin County to compel the Industrial Commission to vacate the order for the initial 30 weeks of change-of-occupation compensation. Regal Ware claimed that a job search was a prerequisite to receipt of benefits for the initial 30–week period as well as for the subsequent 100 weeks. The court of appeals granted the writ.

{¶ 6} This cause is now before this court upon an appeal as of right.

{¶ 7} R.C. 4123.57(D) authorizes a total of 130 weeks of change-of-occupation compensation after a claimant leaves a job because of a qualifying occupational disease. The amount of compensation, however, is not uniform throughout. One rate is paid for the first 30 weeks, and a different rate is paid for the remaining 100 weeks. Whether this distinction is the only one between the two segments is the question now at bar.

{¶ 8} Regal Ware convinced the court of appeals that the rate indeed was the sole distinction and that a claimant must show a job search as a prerequisite to receiving change-of-occupation benefits for the first 30 weeks as well as for the following 100. Claimant disagrees. She argues that while job-search requirements clearly apply to the second—or 100–week—period, they do not apply to the 30 weeks preceding. She relies on language from R.C. 4123.57(D) that she maintains must be read in light of the liberal-construction directive of R.C. 4123.95. She also points to companion Ohio Administrative Code provisions and our decision in *State ex rel. Sayre v. Indus. Comm.* (1969), 17 Ohio St.2d 57, 46 O.O.2d 297, 245 N.E.2d 827. Regal Ware counters that *Sayre* is not on point and that the exact question currently posed was addressed in *State ex rel. Early v. Indus. Comm.* (1995), 103 Ohio App.3d 199, 658 N.E.2d 1131.

{¶ 9} Claimant cites two passages from R.C. 4123.57(D). The first is the instruction that, regarding the first 30 weeks, compensation is to start "as of the date of the discontinuance *or* change." (Emphasis added.) Because the statute distinguishes between the two, claimant argues that simply discontinuing employment is sufficient to trigger payment, thereby negating any job-search requirement.

{¶ 10} The other passage noted is the instruction to calculate compensation for the remaining 100 weeks at "sixty-six and two-thirds per cent of the loss of wages resulting directly and solely from the change of occupation." In referring to change of occupation alone rather than "change or discontinuance," the statute, according to claimant, anticipates alternate employment or, at a minimum, a good-faith job search only during the second payment period. Consequently, the General Assembly's omission of such language from the passage discussing the

first payment period must be interpreted as intentionally imposing a requirement of alternate employment or a job search on the latter period only.

{¶ 11} Supplementing the statute is Ohio Adm.Code 4121-3-25, which claimant offers in further support. Ohio Adm.Code 4121-3-25(D) tracks the preliminary aspect of R.C. 4123.57(D) in stating, "To qualify for an award, as described herein, the employee must establish by appropriate evidence that he has discontinued employment or has changed his occupation to one in which the exposure is substantially decreased."

{¶ 12} Even more persuasive is Ohio Adm.Code 4121-3-25(E): "An award for change of occupation *in excess of* the initial thirty weeks must be supported by evidence of reasonable attempts to secure employment." (Emphasis added.) The corollary is that a job search is not necessary during the first 30 weeks. Regal Ware does not address either provision.

{¶ 13} Claimant lastly points to our decision in *Sayre,* 17 Ohio St.2d 57, 46 O.O.2d 297, 245 N.E.2d 827. Sayre left his mining job after contracting silicosis. He received change-of-occupation benefits for the first 30 weeks but was initially denied further compensation for the second period (then just 75 weeks) because he had not obtained employment. When he became employed at a lesser wage four years later, compensation was again denied, this time because the second compensable period was not within the initial 105 weeks after change of occupation.

{¶ 14} We vacated that decision, based on the legislative history of the statute that supported the conclusion that otherwise eligible claimants could receive the final 75 weeks of compensation so long as they could show reasonable diligence in seeking employment. There is considerable discussion ancillary to *Sayre'*s analysis, with two passages being seized upon by claimant.

{¶ 15} The first is *Sayre'*s declaration that "discontinuance" of occupation and "change" of occupation were synonymous. This, according to claimant, supports her assertion that for the first 30 weeks, it is enough to simply quit the job at which the injurious exposure occurred.

{¶ 16} *Sayre* also stated:

{¶ 17} "In our opinion, the present language of Section 4123.57(D), Revised Code, requires that where an employee discontinues all employment and there is a medical finding by the Industrial Commission that he has contracted silicosis and a change of occupation is advisable, such employee is entitled to the prescribed compensation both for 30 weeks and for such portions of the next 75 weeks in which he has attempted, with reasonable diligence, to obtain the necessary new employment. This diligence must be shown in order to satisfy the statutory requirement that the loss of wages has resulted 'directly and solely'

from the conditions which precipitated the discontinuance." Id., 17 Ohio St.2d at 62, 46 O.O.2d 297, 245 N.E.2d 827.

{¶ 18} The reference to a job search seemingly with regard to only the latter period is further evidence, claimant argues, that the requirement is restricted to the last period.

{¶ 19} Regal Ware argues that claimant is reading *Sayre* too expansively. Regal Ware stresses that the only issue before us in *Sayre* was whether the two periods had to be contiguous, and in this regard, Regal Ware is correct. Regal Ware is also correct in observing that the very issue currently before us—and with it, claimant's proposed interpretation of *Sayre*—was addressed by the Court of Appeals for Franklin County in *Early*. There, the claimant left his job because of asbestosis. Rather than take the exposure-free job that his employer offered, claimant simply retired. When he applied for change-of-occupation compensation, the Industrial Commission denied his claim because claimant had not sought other work:

{¶ 20} " '[R.C.] 4123.57(D) states that if the claimant *has changed or shall change* his occupation to one with no exposure he is entitled to an award. In this case the claimant does not meet this requirement. The claimant is not actually working in another occupation. Further, there is no indication he shall change his occupation as he took retirement around April 16, 1987, and later social security disability, and testified that he hasn't worked since his last day at Standard Oil. Nor did he indicate that he has made any attempt to look for work in another occupation. It is thus found there is no showing of an intent to change his occupation and work in a different field.' " (Emphasis sic.) Id., 103 Ohio App.3d at 201, 658 N.E.2d 1131.

{¶ 21} Early objected to the denial of the first 30 weeks of benefits, stating that, under *Sayre*, he need only show that (1) he contracted a qualifying occupational disease, (2) a change of occupation was medically necessary, and (3) he had left his job. The court of appeals disagreed, distinguishing *Sayre*. It stressed that the job-search issue was not before the *Sayre* court. *Sayre* instead was confined solely to the issue of contiguous compensation periods.

{¶ 22} As to the issue presented in *Early*, the court of appeals wrote:

{¶ 23} "Furthermore, we do not agree that *Sayre* stands for the proposition espoused by relator that R.C. 4123.57(D) contains no requirement that a claimant must actually be working in another occupation or be actively seeking another occupation in order to be entitled to the first thirty weeks of compensation. To accept relator's premise would require this court to read the words 'the employee * * * has changed or shall change his occupation' completely out of R.C. 4123.57(D). The syllabus of *Sayre* states:

{¶ 24} " 'Where an employee discontinues his employment and there is a finding by the Industrial Commission that his change of occupation is medically advisable due to silicosis, such employee is entitled to the compensation prescribed by Section 4123.57(D), Revised Code, for the 30 weeks following such discontinuance and for those portions of the next 75 weeks in which he has reasonably attempted to obtain the new employment *required by such section.*' (Emphasis added.)

{¶ 25} "The court clearly notes that new employment, or a reasonable attempt to obtain such employment, is required by the statute * * *." Id., 103 Ohio App.3d at 203–204, 658 N.E.2d 1131.

{¶ 26} Claimant does not persuasively distinguish *Early*. She asserts that we are not bound by the court of appeals' decision and urges instead that we rely on the language of the Ohio Administrative Code and the Revised Code. In considering this proposition, we acknowledge the difficulty of our decision, as both parties have presented persuasive arguments. We are, moreover, unaware of any obvious practical considerations that would favor one position over the other. Therefore, we defer to the commission's expertise in this matter and uphold its analysis and decision.

{¶ 27} Therefore, the judgment of the court of appeals is reversed as to the initial 30–week period.

Judgment reversed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

———————

Stephen E. Mindzak Law Offices, L.L.C., and Stephen E. Mindzak; Larrimer & Larrimer and Terrence Larrimer, for appellant.

Coolidge, Wall, Womsley & Lombard, L.P.A., David C. Korte and Michelle D. Bach, for appellee Regal Ware, Inc.